## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| AMBER KIRKLAND as Personal Representative for the ESTATE OF ANTONIO KIRKLAND, on behalf of the Estate and Survivors, Amber Kirkland, Antonio Kirkland, Jr., Antavious Kirkland, and SANTOS McGILL,<br><br>      Plaintiffs,<br><br>v.<br><br>MARK INCH in his Official Capacity and CENTURION OF FLORIDA, a health care corporation, and WARDEN JOHN D. WILLIS, COL. JOHNNY MORALES, LT. HECTOR C. VELASQUEZ, SGT. STEPHEN P. BUSIC, OFCR JAKAYE FULLER-WILCOX, OFCR. GABLE, PAUL A. PAVESE, JR., and JOHN DOES 1-5, in their individual capacities,<br><br>      Defendants. | CASE NO. 3:21-cv-673 |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### Introduction

Plaintiff Santos McGill was forced to share a cell with an untreated emotionally disturbed inmate, Antonio Kirkland, who had suffered the effects of a sexual assault and was mistrustful of strangers. Officers ordered the two share a cell to promote a fight. After McGill was placed in Kirkland's cell, he tried to pacify Kirkland and win his trust. But officers antagonized Kirkland, encouraging him to fight McGill, saying that only one of them could leave the cell alive and, "One of you needs to stop breathing." Plaintiff sues Defendants and alleges:

1

## Jurisdiction and Venue

1. Plaintiff's claim for relief is based on 42 U.S.C. § 1983, 1985, and state law claims. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state law claims alleged herein.

3. Plaintiff's claim is also based on Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, and 12133, and § 504 of the Rehabilitation Act.

4. Declaratory relief is authorized by 28 U.S.C. §§ 2201-2202 and Fed.R.Civ.P. 57, and injunctive relief is authorized by Fed.R.Civ.P. 65.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1391(c), as some of the events sued upon occurred in this judicial district.

6. Under § 95.11(10), Fla.Stat., actions based on intentional torts as described in §§ 782.04 and 782.07, Fla.Stat., for the murder or manslaughter of a disabled adult, may be commenced at any time.

7. All conditions precedent to this action have been performed or waived.

## Parties

8. Plaintiff, AMBER KIRKLAND, is the daughter of Decedent Antonio Kirkland and the Personal Representative of the Estate of Antonio Kirkland, suing on behalf of the Estate and Survivors Amber Kirkland, Antonio Kirkland, Jr., and Antavious Kirkland.

9.  Plaintiff, SANTOS McGILL, is a prisoner in the Florida Department of Corrections and a witness to the circumstances of the death of Decedent.

10. Defendant MARK INCH, in his Official Capacity, leads a state agency charged with operating Florida prisons and the custody of prisoners. He is sued only for injunctive relieve and under the ADA and Rehabilitation Act.

11. At all times material hereto, Defendant CENTURION OF FLORIDA, was a health care corporation contracting with FDC to provide medical and mental health care to inmates under the care of FDC.

12. At all times material hereto, Defendant JOHN D. WILLIS, was the Warden of Charlotte Correctional Institution (Charlotte C.I.). He is sued individually.

13. At all times material hereto, Defendant COL. JOHNNY MORALES, was the Chief of Security at Charlotte C.I. He is sued individually.

14. At all times material hereto, Defendant LT. HECTOR C. VELASQUEZ was an Officer at Charlotte C.I. He is sued individually.

15. At all times material hereto, Defendant SGT. STEPHEN P. BUSIC, was an Officer at Charlotte C.I. He is sued individually.

16. At all times material hereto, Defendant JAKAYE FULLER-WILCOX, was a Corrections Officer or Trainee at Charlotte C.I. He is sued individually.

17. At all times material hereto, Defendant OFFICER GABLE, was an Officer at Charlotte C.I. He is sued individually.

18. At all times material hereto, Defendant PAUL A. PAVESE, JR., was an Officer at Charlotte C.I. He is sued individually.

19. At all times material hereto, Defendant JOHN DOE 1 was an Officer at Charlotte C.I. He is sued individually.

20. At all times material hereto, Defendant JOHN DOE 2 was an Officer at Charlotte C.I. He is sued individually.

21. At all times material hereto, Defendant JOHN DOE 3 was an Officer at Charlotte C.I. He is sued individually.

22. At all times material hereto, Defendant JOHN DOE 4 was an Officer at Charlotte C.I. He is sued individually.

23. At all times material hereto, Defendant JOHN DOE 5 was an Officer at Charlotte C.I. He is sued individually.

24. JOHN DOES 1-5 may have been members of a cell extraction team.

25. Defendants acted under the color of law but outside the course and scope of their employment, pursuing private and criminal purposes.

### Common Allegations of Fact

26. In July of 2017, Decedent Antonio Kirkland (Kirkland") was an inmate in the custody of the Florida Department of Corrections (FDC).

27. On July 10, 2017, at approximately 4:29 p.m., Inmate Antonio Kirkland was pronounced deceased at Charlotte Correctional Institution.

28.  Prison officials ordered Kirkland to accept a cellmate and he refused, asserting was raped and should not have a cellmate because of "PREA."

29.  The intended cellmate, Santos McGill also didn't want to be placed in the cell with Kirkland and believed that Mr. Kirkland was in a dangerous and volatile mental state, but he was forced by the officers to share the cell with Kirkland.

30.  Decedent Kirkland told McGill that six officers had held him down and a corrections trainee, Fuller, sprayed chemical agents into his rectum.

31.  Trainee Fuller-Wilcox ("Fuller") came by the cell with other officers and told McGill, you have our permission to do anything you want to Kirkland.

32.  Fuller and the officers kept antagonizing Kirkland, trying to set Kirkland and McGill against each other to fight to the death apparently for sport.

33.  Forcing inmates to fight each other for sport was a common practice in the Florida Department of Corrections, well known to the Warden, the Chief of Security, and prison administrators throughout the system.

34.  McGill protested, "I only got a week. I don't want any problems."

35.  On the third day, another officer, Brandon Fisher showed up at the cell and continued to instigate a fight between McGill and Kirkland.

36.  McGill was trying to keep Kirkland cool. Kirkland appeared to have mental problems. He talked about his family and started to cry.

37.  Kirkland was convinced that officers put McGill into the cell to harm him and

that McGill meant him harm and he began to hit McGill.

38. Other officers came up and encouraged the two inmates to fight.

39. Trainee Fuller began spraying both inmates with gas through the food slot.

40. Trainee Fuller called backup, continuing to spray gas multiple times.

41. Fuller used Sabre Red, one of the most powerful versions of pepper spray on the market, featuring high potency and a high-pressure stream.

42. On information and belief, Fuller was not trained or authorized to use pepper spray of any kind or to be in the dormitory where the inmates were held.

43. McGill tried to dissuade Kirkland from hitting him; Kirkland continued to strike McGill, claiming, "You're trying to kill me."

44. Despite Mr. Kirkland's obviously disturbed mental state, none of the officers attempted to summon medical or mental health providers to the cell.

45. On July 10, 2017, many corrections staff, including Morales, Velasquez, Busic, Fuller-Wilcox, Gable, Pavese, Fisher and John Does 1-5, assembled at cell front to encourage Kirkland and McGill to harm each other.

46. Corrections staff called, out, "Only one of you is coming out." "One of you needs to stop breathing." And "One of you needs to kill the other."

47. No staff present sought to intervene to prevent the abuse although able.

48. At the urging of corrections staff, Kirkland tried to claw McGill's eyes out.

49. The staff brought a kind of heavy-duty chemical agents and sprayed the

inmates another eight or nine times with the powerful spray.

50. McGill begged the officers for help, telling them he was afraid for his life.

51. Finally, Kirkland crawled to the door and sat with his back against the door, breathing heavily. Officers sprayed down through the food slot.

52. By now, the Colonel and Major and numerous officers were at the cell.

53. No officer or administrator sought to prevent the abuse, though able.

54. Kirkland ceased moving. McGill got off the top bunk where he went for safety and held Kirkland's hands up to the food slot to be cuffed.

55. After sustained physical abuse, officers finally took McGill to the shower.

56. Witnesses said Kirkland fell off the stretcher and appeared to be dead.

57. The correctional officers and the medical staff had long ignored Kirkland's need for urgent medical and mental health care exposing Kirkland and other inmates to undue suffering and the risk of death.

58. At the time of the incident, Kirkland was clearly recognizable as a disabled adult suffering from obvious but untreated mental illness.

59. 'Disabled adult' means a person 18 years of age or older who suffers from a condition of physical or mental incapacitation due to a developmental disability, organic brain damage, or mental illness, or who has one or more physical or mental limitations that restrict the person's ability to perform the normal activities of daily living. § 825.101(3), Fla. Stat.

60. Centurion providers were aware of his serious mental health condition but failed to provide timely or adequate treatment or monitoring.

61. Among the investigators were some who said they were federal agents.

62. Just shortly after the event, "white shirts" (administrators) came to McGill's cell and told him to write something that would clear the officers.

63. A Hispanic officer, either Morales or Velasquez, visited McGill and called him a "motherfucker" and said, "You're going to write this" (meaning a statement exculpating the Defendant officers at the scene).

64. McGill refused to write anything. The officers present threatened to move him far away from his family. Officers tried to plant a knife on him.

65. McGill was placed in confinement and had excessive and unnecessary retaliatory force used on him at the South Florida Reception Center.

66. There was an attempt to move Kirkland to Tomoka C.I., but staff there refused to let him get off the van, so then Kirkland was taken to Taylor C.I., then to Columbia Annex, then back to Taylor. There was a lot of staff interest in him.

67. A "white shirt" told him "I don't know what you have going on but we want you away from here." A classification officer said he'd be transferred again.

68. While at Columbia Annex, McGill was called to medical but it was a ploy. Officers there put on black gloves and after taking McGill to an area where there was no camera present, they beat him.

69. He was told, "You're a problem at other institutions. We know you're a fucking snitch. Strip down to your boxers. You know what's going on. We're going to make you cooperate."

70. The officers then sprayed and beat him extensively, causing visible bruising and injuries to his face and body.

71. A Sgt. Walker asked him what he told the FBI. He said, "A couple of my friends got in trouble. I'll kick your ass about it."

72. An inmate named Frank told him he was asked by officers "to fuck you up." "Frank," didn't do anything to harm McGill because they realized they had mutual acquaintances, and Frank was then moved out of the cell.

73. The next day, McGill found glass in his food.

74. For a time, Santos McGill was not bothered by officers until he got a letter from Attorney Myers about Kirkland. Then he was sent to Suwannee C.I., which is prominently used as a "retaliation" camp.

75. Antonio Kirkland was just one of 481 inmates who died between July 1, 2017 and June 31 2018, up 26 percent from the year before.

76. Deaths in the Florida Department of Corrections have been going up even as the number of inmates in Florida prisons have been going down.

77. The number of deaths in FDC prisons was higher in 2017/2018 than in any year prior to the current pandemic year.

78. Inmate homicides have been a systemic issue according to statistics compiled by the Florida Department of Corrections. From the time period 2011 to 2014, there have been a total of at least 32 inmate deaths that were determined to be homicides by the Medical Examiner.

79. Warden Willis and his administrators knew of excessive force and abuse, of inmates through daily reports and long-term death and injury statistics.

80. Although Antonio Kirkland's death was classified as "accidental," there is every reason to believe that it was really a homicide.

81. Data compiled by the Florida Department of Corrections show ten male homicides in Florida's correctional institutions in the year of 2011.

82. Data compiled by the Florida Department of Corrections, show six male homicides in Florida's correctional institutions in the year of 2012.

83. Data compiled by the Florida Department of Corrections show seven male homicides in Florida's correctional institutions in the year of 2013.

84. Data compiled by the Florida Department of Corrections show eleven male homicides in Florida's correctional institutions in the year of 2014.

85. Just a few years prior to Antonio Kirkland's death at Charlotte C.I., another Charlotte C.I. inmate, Matthew Walker, was beaten to death by officers.

86. Before and since this incident, Defendants have cooperated to permit:

a) officer-on-inmate assaults;

b) cover-ups involving reporting breaches and erasing evidence;

c) failure to report or accurately report use of force details;

d) failure to timely summon video cameras for uses of force;

e) suppression of or undue influence on use of force investigations;

f) failure to document or preserve evidence;

g) failure to punish abuses, false reports, or rule violations once discovered.

87. Defendants were aware their administrative and supervisory practices were substantially certain to cause the kind of harm suffered by Kirkland.

88. The Defendants' conduct herein, including but not limited to their decision to "teach lessons" to difficult inmates and to reward and promote violent abusive officers proximately caused the damages to Plaintiff.

89. Defendants each acted to violate Antonio Kirkland's constitutional rights or failed to intervene to prevent the violation of his rights, though able.

90. Defendants interfered with timely medical treatment to save Antonio Kirkland's life or failed to intervene to prevent interference, though able.

91. Defendants acted collectively and jointly to violate Kirkland's rights.

92. Defendants acted with specific intent to harm Kirkland and did so.

93. Defendants reached an implicit or explicit understanding and:

a) Agreed to commit and to stand silent and acquiesce in acts which resulted in the severe physical injury and death of Antonio Kirkland;

b) Agreed to observe the Code of Silence which among Florida prison officials is the meaning of the motto, "We Never Walk Alone."

c) Agreed to delay medical treatment to Kirkland, though unresponsive;

d) Agreed to hide and destroy and alter evidence, to engage prisoners and others to help hide, destroy, and cover up evidence and remain silent;

e) Agreed to coordinate their accounts of the use of force to minimize inconsistencies, to encourage strategic lack of knowledge or memory;

f) Agreed to give false and misleading statements to investigators and continue misinformation for years after their criminal actions;

94. In so doing, Defendants pursued their own, independent criminal interests which were inconsistent with the interests of their agency.

95. Decedent, Antonio Kirkland's death was a direct and proximate result of Defendants collective wrongful acts under color of law.

## **Causes of Action**

I. **Failure to Protect under 42 U.S.C. § 1983 (Mark Inch, Injunctive Relief)**

96. Plaintiffs re-allege the Common Allegations as if fully set forth herein.

97. Plaintiff is entitled to declaratory and injunctive relief against Defendant Mark Inch in his official capacity, for a systemic failure, through his agents and employees ("staff") to protect Plaintiff from threats and retaliation in violation of the First and Eighth Amendment to the U.S. Constitution, as further set out in the Common Allegations of Fact, and as follows:

a. The Florida Department of Corrections has a tradition of setting up fights between inmates, despite their unwillingness, including fights to the death, variously called, "Fight Club" or "Gladiator School" for officers' amusement and sometimes bets are placed on the inmate combatants.

b. Since being forced into conflict with Decedent Antonio Kirkland, in a "Fight Club" scenario, Plaintiff McGill has been labeled a "snitch" and

subject to threats of physical violence and actual physical violence by corrections employees for refusing to retract his truthful testimony.

c.  The campaign of threats and violence which began at Charlotte C.I. has continued through several transfers without abating and is currently being administered at Suwannee Correctional Institution.

d.  Plaintiff is currently being housed at Suwannee Correctional Institution which is a harsh and inhumane prison that is used to punish inmates who complain about unfairness and brutality at Florida prisons.

e.  Plaintiff McGill has been threatened with beatings and death and has actually suffered beatings for telling the truth about the physical abuse of himself and the abuse and death of his cellmate Antonio Kirkland.

f.  Secretary Inch is aware of the problem of retaliation and has issued a sternly-worded memorandum on retaliation to corrections employees but has failed to take the necessary actions to enforce his commands.

g.  The Uniform Commitment Order by which prisoners are committed to the Florida Department of Corrections orders the keepers of Florida prisoners to "safely keep" the prisoners and states, "Herein fail not."

98.  Secretary Inch has a non-delegable duty to protect Florida prison inmates.

99.  As a proximate result of denial of protection, Plaintiff McGill has suffered irreparable harm, including physical injury, mental distress, humiliation, and he will continue to suffer such injuries in the future unless relief is granted.

100. Plaintiff submits that he has a strong chance of success and the relief sought is narrowly drawn and consistent with the public interest.

101. As it was necessary for Plaintiff to retain the undersigned attorney to represent him, Plaintiff is entitled to an award of attorneys' fees and costs.

WHEREFORE, Plaintiff seeks relief as noted below.

## II.    First Amendment Retaliation under 42 U.S.C. § 1983

102. Plaintiffs re-allege the Common Allegations as if fully set forth herein.

103. Plaintiff Santos McGill is entitled to relief against Willis, Morales, Velasquez, Busic, Fuller-Wilcox Gable, Pavese, Fisher and John Does 1-5.

104. Plaintiff McGill is entitled to relief against Mark Inch for injunctive relief.

105. Santos McGill communicated his right to rely in good faith on his First Amendment right to give, and not to rescind, his truthful account of the incident surrounding the death of Antonio Kirkland.

106. Santos McGill was intentionally retaliated against or punished because of his expressed intent to give truthful testimony as to the aforementioned incident.

107. The aforementioned parties participated in retaliation, including threats, to Santos McGill to the extent that the retaliation would likely deter a similarly situated reasonable person from exercising First Amendment rights.

108. As it was necessary for Plaintiff to retain the undersigned attorney to represent him, Plaintiff is entitled to an award of attorneys' fees and costs. WHEREFORE, Plaintiff seeks relief as noted below.

## III.    42 U.S.C. § 1983: Excessive Use of Force/Failure to Intervene

109. Plaintiffs re-allege the Common Allegations as if fully set forth herein.

110. Plaintiff is entitled to relief against Morales, Velasquez, Busic, Fuller-Wilcox Gable, Pavese, and John Does 1-5, for violation of the Eighth

Amendment to the U.S. Constitution and failing to intervene, though able.

111. The aforesaid Defendants, while acting under color of state law and by virtue of the authority vested in them by the State of Florida or its subdivisions or agencies, unlawfully and without justification jointly and severally violated the Eighth Amendment when Defendants:

a) Had actual knowledge that officers planned to physically assault, harass, attack, and cause harm, not excepting death, to McGill and Kirkland;

b) Subjecting McGill and Kirkland to round after round of chemical agents, ultimately causing or contributing to McGill's untimely death;

c) Failed to secure timely medical attention to Kirkland while pretending that he was not seriously injured; or

d) Becoming aware of the severe physical abuse of McGill and Kirkland, and failing to intervene to stop the abuse, though able.

112. As a direct result of the above-described excessive use of deadly force and violence on Santos McGill and Antonio Kirkland, the inmates sustained brutal and severe physical injuries resulting in Kirkland's untimely death.

113. As Plaintiffs are obliged to retain counsel for redress, pursuant to 42 U.S.C. 1988, they are entitled to reasonable attorney fees as well as costs. WHEREFORE, Plaintiff seeks damages as noted below.

## IV.  42 U.S.C. § 1983: Deliberate Indifference (Willis, Morales, Velasquez)

114. Plaintiffs re-allege the Common Allegations as if fully set forth herein.

115. Plaintiffs are entitled to relief against Defendants Willis, Morales, and Velasquez, for deliberate indifference to violation of the Eighth Amendment.

116. Prior to July 3, 2012, aforementioned Defendants evinced deliberate indifference to constitutional rights of inmates, which ultimately caused the violation of Decedent, Mr. Kirkland's constitutional rights and his death.

117. Prior to July 3, 2012, the Defendants were aware of their subordinate correctional officers' tendency to excessive force against inmates.

118. Defendants maintained a practice of arranging or facilitating the use of excessive force and suppressing investigations of misconduct, altering, suppressing or destroying evidence or ordering others to do the same.

119. Defendants performed, caused, planned, or encouraged excessive force and made further acts of excessive force substantially certain to occur.

120. As a direct, proximate, and foreseeable result of the Defendants' deliberate indifference, Mr. Kirkland suffered severe physical injuries and death.

121. As Plaintiffs are obliged to retain counsel for redress, pursuant to 42 U.S.C. 1988, they are entitled to reasonable attorney fees as well as costs.

WHEREFORE, Plaintiff seeks damages as noted below.

## V. Conspiracy under 42 U.S.C. 1983 to Violate the Eighth Amendment

122. Plaintiffs re-allege the Common Allegations as if fully set forth herein.

123. Plaintiffs are entitled to relief against Defendants Willis, Morales, Velasquez, Busic, Fuller-Wilcox Gable, Pavese, and John Does 1-5, for violation of the Eighth Amendment right against excessive force.

124. Defendants acted under color of law to further the conspiracy.

125. All the co-conspirators committed overt acts to achieve a criminal purpose and were otherwise willful participants in collective acts to violate rights.

126. In so doing, Defendants created and prolonged secrecy about their wrongful acts long depriving the Kirkland Estate of fair notice of a cause of action.

127. As a direct result of Defendants' conspiracy to deprive Mr. Kirkland of his constitutional rights, he suffered severe physical injuries and death.

128. To further the conspiracy, all co-conspirators committed overt unlawful acts and were otherwise willful participants in collective acts to violate rights.

129. As a direct result of the above-described conspiracy in aid of excessive deadly force on Santos McGill and Antonio Kirkland, both sustained brutal and severe physical injuries resulting in Kirkland's untimely death.

130. As Plaintiffs are obliged to retain counsel for redress, pursuant to 42 U.S.C. 1988, they are entitled to reasonable attorney fees as well as costs. WHEREFORE, Plaintiff seeks damages as noted below.

## VI.   Conspiracy to Interfere with Civil Rights (Defendants Willis, Morales, Velasquez, Busic, Fuller-Wilcox Gable, Pavese, and John Does 1-5)

131. Plaintiffs re-allege the Common Allegations as if fully set forth herein.

132. Plaintiffs are entitled to relief against Defendants Willis, Morales, Velasquez, Busic, Fuller-Wilcox Gable, Pavese, and John Does 1-5, for Conspiracy to Interfere with Civil Rights pursuant to 42 U.S.C. 1895(2) by

threatening and intimidating witness Santos McGill to prevent him from

testifying freely, fully and truthfully, and injure him for having so testified.

133. As Plaintiffs are obliged to retain counsel for redress, pursuant to 42 U.S.C.

1988, they are entitled to reasonable attorney fees as well as costs.

WHEREFORE, Plaintiff seeks damages as noted below.

## VII.  Violations of the ADA and Rehabilitation Act (Mark Inch)

134. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

135. Plaintiff Amber Kirkland, as Personal Representative, is entitled to relief

against Mark Inch as Secretary of the Florida Department of Corrections, for

violating Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101

et seq., (hereinafter "ADA") which provides in pertinent part:

> No qualified individual with a disability shall, by reason of such disability,
> be excluded from participation in or be denied the benefits of the services,
> programs, or activities of a public entity, or be subjected to discrimination
> by such entity.
> 42 U.S.C. § 12132

> Title II of the Act prohibits, among other things:

> - limiting a qualified individual's enjoyment of any right, privilege,
>   advantage, or opportunity enjoyed by others receiving an aid, benefit, or
>   service of an agency; and
> - subjecting a qualified individual to discrimination under any program or
>   activity conducted by an agency.
> 28 C.F.R. § 39.130.

136. Antonio Kirkland was disabled as defined at 42 U.S.C. § 12102(2), as he

suffered a physical impairment that substantially limited one or more of his

major life activities, including, but not limited to, mental health disability.

137. Mr. Kirkland was a "qualified individual" as defined at 42 U.S.C. § 12131(2): "Qualified Individual" means a person with a disability who meets the essential eligibility requirements for receipt of services or participation in programs or activities provided by the entity (with or without regard to any auxiliary aids or modifications).

138. FDC is a public entity that has violated Title II of the ADA.

139. FDC is an entity that receives federal funding.

140. Charlotte C.I. is a facility and its operation comprises a program and service for purposes of Title II of the ADA.

141. Defendant Inch authorized his agents and employees to act for FDC in committing ADA violations alleged herein. Defendant Inch's agents and employees accepted the undertaking of acting on behalf of FDC when they committed the violations alleged herein. Defendant Inch had control over his agents and employees as they committed the ADA violations alleged herein.

142. The ADA violations alleged herein and committed by Defendant FDC's agents and employees were done while acting within the course and scope of their employ and/or agency with Defendant FDC. Thus, Defendant FDC is vicariously liable for the actions of its agents and employees when they committed the ADA violations alleged herein.

143. Kirkland's need for a reasonable accommodation was known and obvious.

144. Defendant FDC, its employees, and agents knew and/or should have known of Mr. Kirkland's need for a reasonable accommodation.

145. FDC, its agents and employees, acted intentionally and/or with deliberate indifference to Mr. Kirkland's need for a reasonable accommodation by:

   a.  failure to accommodate his mental health disability;

   b.  permitting practices whereby inmates with mental health disabilities are punished based on animus toward their disability;

   c.  failing and intentionally refusing to train Defendant FDC employees regarding the safe management of mentally ill inmates;

   d.  permitting sadistic officers to bait and abuse Mr. Kirkland;

   e.  failing to use alternatives to force to manage Mr. Kirkland.

146. As a proximate result of defendant FDC, its employees', and agents' failure and intentional refusal to provide Mr. Kirkland with a reasonable accommodation for his disability, he suffered physical harm and death.

   WHEREFORE, Plaintiff seeks damages as noted below.

## VIII.  Failure to Treat under 42 U.S.C. § 1983 (Centurion of Florida)

147. Plaintiffs re-allege the Common Allegations as if fully set forth herein.

148. Plaintiff is entitled to relief against Centurion for systemic failure to treat known serious medical conditions in violation of the Eighth Amendment as further set out in the Common Allegations above, and as follows:

   a.  Centurion, which was responsible for Plaintiff's medical care has a

nationwide corporate policy to provide prisoners with as little care as possible as late as possible in order to maximize profits.

b. Because Centurion encouraged its employees to minimize health care cost even when it put inmates at risk, medical staff felt free to deny care.

c. Centurion has been criticized by state health care audit reports, public organizations, the media, and numerous prisoner complaints.

a. Centurion's failure to respond to and address Decedent's mental health problems was a cause of his injury and death.

b. Centurion had a practice of under-staffing health care so Plaintiff did not receive the monitoring and care that would have saved his life.

c. Centurion had a practice of under-paying medical doctors but permitting them to work short hours so that they were rarely available to inmates.

d. Centurion routinely fails to provide mental health care to inmates.

149. As a proximate result of Defendant's denial of care, Plaintiff has suffered significant physical injury, mental distress, humiliation, and pain, and will continue to suffer such injuries in the future unless relief is granted.

150. As it was necessary for Plaintiff to retain the undersigned attorney to represent him, Plaintiff is entitled to an award of attorneys' fees and costs.

WHEREFORE, Plaintiff seeks relief as noted below.

## IX.    Action for Pre-Death Damages under Florida Survival Statute

151. Plaintiffs re-allege the Common Allegations as if fully set forth herein.

152. Plaintiff Kirkland is entitled to relief against Defendants Willis, Morales, Velasquez, Busic, Fuller-Wilcox Gable, Pavese, Fisher and John Does 1-5, pursuant to § 46.021, Fla.Stat., for acts and/or omissions which caused

injury to Decedent but did not cause or contribute to his death.

153. To the extent any Defendant's wrongful acts are found not to have caused the death of Antonio Kirkland, those acts give rise to pre-death damages for the physical pain and mental distress caused by those wrongful acts.

154. As a result of Defendants' wrongful acts, Antonio Kirkland suffered great fear and mental anguish; humiliation; disability; aggravation of an existing condition; loss of enjoyment of life; physical pain due to abusive treatment; all other injuries caused by Defendants' wrongful acts other than those that actually caused Decedent's death.

WHEREFORE, Plaintiff prays for judgment as noted below.

## **Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests of the Court:

A. Declaratory and Injunctive Relief to the extent of taking action to discontinue and prohibit ongoing threats and extraordinary treatment having the effect of chilling the exercise of privileged speech.

B. Compensatory damages in an amount to be determined, including damages to the Estate and to the Survivors of Antonio Kirkland for their own mental pain and suffering and other losses and to Santos McGill for physical injury and mental pain and suffering;

C. Punitive damages against the individual defendants for their actions depriving both Santos McGill and Antonio Kirkland of their rights;

D. Reasonable attorney's fees and costs under 42 U.S.C. § 1988;

E. Trial by jury on all counts so triable; and

F. Any further relief this Court deems just and proper.

Respectfully submitted,   *s/ James V. Cook*
                          JAMES V. COOK, ESQ.
                          Florida Bar Number 0966843
                          Law Office of James Cook
                          314 West Jefferson Street
                          Tallahassee, Florida 32301
                          (850) 222-8080; 561-0836 fax
                          cookjv@gmail.com

                          *s/ Cynthia A. Myers*
                          Cynthia A. Myers, Esq.
                          Fla. Bar No. 147397
                          Cynthia A. Myers, PA
                          PO Box 15011
                          Tallahassee, FL 32308
                          850/322-1124
                          cindy@cindymyerslaw.com

                          ATTORNEY FOR PLAINTIFFS